1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

\* \* \*

SATA GmbH & Co. KG,

                Plaintiff,

   v.

Taizhou Xingye Pneumatic Tools Co., Ltd,

               Defendant.

Case No.: 2:19-cv-01948-GMN-BNW

**REPORT AND RECOMMENDATION**

Before the Court is Plaintiff's Motion for Default Judgment. ECF No. 8. No response has been filed.

## I.     Procedural Background

On November 6, 2019, Plaintiff filed a verified complaint. ECF No. 1. Plaintiff alleged that it is a leading manufacturer of paint spray guns, paint spray gun reservoirs, and related equipment principally used to paint automobiles. *Id.* Plaintiff further alleged that it has several trademarks and patents for its goods that Defendant infringed. *Id.* Specifically, Plaintiff alleged that Defendant engaged in trademark counterfeiting in violation of 15 U.S.C. § 1114, trademark infringement also in violation of 15 U.S.C. § 1114, false designation of origin/unfair competition in violation of 15 U.S.C. § 1125, common law trademark infringement and unfair competition, and design patent infringement in violation of 35 U.S.C. §§ 171, 289. *Id.* Plaintiff sought a permanent injunction prohibiting Defendant from engaging in this conduct in the future, damages, attorneys' fees, and costs. *Id.* at 18-19.

A summons was issued to Defendant and returned as executed on November 12, 2019. ECF Nos. 2, 5. Defendant did not answer or otherwise respond to Plaintiff's complaint. Accordingly, on February 11, 2020, Plaintiff moved for entry of clerk's default. ECF No. 6. The

1   clerk granted this request the next day. ECF No. 7. Now, Plaintiff moves for default judgment

2   against Defendant. ECF No. 8.

3   **II.     Jurisdiction**

4          The Court has subject matter jurisdiction over this case under 28 U.S.C. § 1331, as this

5   case arises under the laws of the United States (namely, the federal trademark and patent

6   statutes). The Court also has supplemental jurisdiction over Plaintiff's related state law claims

7   under 28 U.S.C. § 1367, as these claims are so related to the claims over which the Court has

8   original jurisdiction that they form part of the same case or controversy.

9          The Court also has personal jurisdiction over Defendant. This is so because Defendant

10  advertised, displayed, and offered to sell its infringing goods in Nevada. *See* ECF No. 1 at 2;

11  *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (upon entry of default,

12  all well-pled facts in the complaint are taken as true, except those relating to the amount of

13  damages).

14  **III.    Legal Analysis**

15          **A.     Default Judgments**

16          Under Federal Rule of Civil Procedure 55(b)(2), the court may enter default judgment if

17  the clerk previously entered default based on the defendant's failure to defend. After entry of

18  default, the factual allegations in the complaint are taken as true, except those relating to

19  damages. *TeleVideo Sys.*, 826 F.2d at 917-18; Fed. R. Civ. P. 8(b)(6) ("An allegation—other than

20  one relating to the amount of damages—is admitted if a responsive pleading is required and the

21  allegation is not denied."). Whether to grant a default judgment lies within the court's discretion.

22  *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986). In deciding whether to enter a default

23  judgment, the court considers factors such as:

24          (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's
            substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at
25          stake in the action; (5) the possibility of a dispute concerning material facts; (6)
            whether the default was due to excusable neglect, and (7) the strong policy
26          underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

27

28

1

2   *Id.* at 1471-72. A default judgment generally is disfavored because "[c]ases should be decided

3   upon their merits whenever reasonably possible." *Id.* at 1472.

4   **B.   Default Judgment in This Case**

5   Here, the Court has discretion to enter a default judgment, as the clerk previously entered

6   default based on Defendant's failure to defend. *See* ECF No. 7. Accordingly, the Court considers

7   the seven *Eitel* factors to determine if entering a default judgment is appropriate in this case.

8   *First,* the Court considers the possibility of prejudice to the plaintiff. Plaintiff would be

9   prejudiced if it had to try this case rather than obtain a default judgment, as trial would require

10   additional expenditure of human and financial resources. These expenses and efforts are

11   unnecessary because the complaint alleged sufficient facts to demonstrate Defendant's unlawful

12   conduct, and those allegations are uncontested. *See United States v. $150,990.00 in U.S.*

13   *Currency*, No. 2-12-CV01014-JAD, 2014 WL 6065815, at *2 (D. Nev. Nov. 10, 2014) ("[T]he

14   government would be prejudiced by having to expend additional resources litigating an action

15   that appears to be uncontested. This factor favors default judgment."). Accordingly, the first

16   factor cuts in favor of entering a default judgment.

17   *Second,* the Court considers the merits of Plaintiff's substantive claim. Plaintiff filed a

18   detailed, verified complaint describing Defendant's unlawful conduct. These allegations are

19   uncontested and are now deemed admitted. *See* Fed. R. Civ. P. 8(b)(6). This factor cuts in favor

20   of entering a default judgment.

21   *Third,* the Court considers the sufficiency of the complaint. As previously stated, the

22   complaint is detailed and verified. It sufficiently sets forth Plaintiff's trademark infringement and

23   related claims under the liberal pleading standard of Rule 8 of the Federal Rules of Civil

24   Procedure. This factor cuts in favor of entering a default judgment.

25   *Fourth,* the Court considers the sum of money at stake in the action. Plaintiff requests

26   over ten million dollars between statutory damages, attorneys' fees, and costs. *See* ECF No. 8 at

27   27. Relatively speaking, this is a large sum of money. However, large statutory damage awards

28

1    are permitted, as those who infringe other's intellectual property can profit enormously from

2    their conduct. Accordingly, this factor neither cuts for nor against entering a default judgment.

3        *Fifth,* the Court considers the possibility of a dispute concerning material facts. Currently,

4    there is no dispute over any material facts. And given Defendant's failure to participate in this

5    case, a dispute over any material facts is unlikely. This factor cuts in favor of entering a default

6    judgment.

7        *Sixth,* the Court considers whether the default was due to excusable neglect. There is no

8    evidence that Defendant's default is due to excusable neglect. Despite being personally served

9    with process, Defendant has not responded for more than a year. ECF Nos. 5 at 2; 6-1 at 2. This

10   factor cuts in favor of entering default judgment.

11       *Seventh,* the Court considers the strong policy underlying the Federal Rules of Civil

12   Procedure favoring decisions on the merits. While the Federal Rules favor decisions on the

13   merits, they also frequently permit termination of cases before the court reaches the merits. As

14   Rule 55 indicates, one such instance is when a party fails to defend against an action. Thus, the

15   preference to decide cases on the merits does not preclude a court from entering a default

16   judgment. *Kloepping v. Fireman's Fund, No. C 94-2684 T*EH, 1996 WL 75314, at *3 (N.D. Cal.

17   Feb. 13, 1996). While cases should be decided on the merits when possible, given Defendant's

18   failure to participate in this case, a decision on the merits is "impractical, if not impossible." *See*

19   *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002.). Accordingly, this

20   factor cuts in favor of granting a default judgment.

21       Considering all the *Eitel* factors, the Court finds, in its discretion, that entering a default

22   judgment in this case is appropriate.

23       **C.    Relief Requested**

24       As previously noted, Plaintiff seeks a permanent injunction prohibiting Defendant from

25   engaging in this conduct in the future, damages, attorneys' fees, and costs. The Court will

26   analyze the propriety of each form of relief requested.

27

28

1      **1.      Permanent Injunction**

2      First, Plaintiff seeks a permanent injunction prohibiting Defendant from infringing on its

3   intellectual property rights. "[A] permanent injunction may be entered where the plaintiff shows:

4   '(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary

5   damages, are inadequate to compensate for that injury; (3) that, considering the balance of the

6   hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the

7   public interest would not be disserved by a permanent injunction.'" *La Quinta Worldwide LLC v.*

8   *Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 879 (9th Cir. 2014). Injunctive relief is almost always

9   appropriate in trademark and unfair competition cases, "since there is no adequate remedy at law

10  for the injury caused by a defendant's continuing infringement." *Century 21 Real Estate Corp. v.*

11  *Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988).

12     Here, the Court finds that a permanent injunction is appropriate. First, Plaintiff has

13  suffered and will continue to suffer irreparable injury (including to its goodwill) without a

14  permanent injunction. Second, remedies at law (including monetary damages) are inadequate to

15  compensate Plaintiff for the ongoing damage it will suffer if the infringement is allowed to

16  continue. Third, considering the balance of the hardships between Plaintiff and Defendant, a

17  permanent injunction is still warranted. Simply put, Defendant has no right to infringe on

18  Plaintiff's intellectual property. Fourth, the public interest is not disserved by a permanent

19  injunction. To the contrary, the public will be served by a permanent injunction that prevents

20  confusion about the source of Plaintiff and Defendant's goods. Accordingly, a permanent

21  injunction that prohibits Defendant from continuing to infringe on Plaintiff's intellectual

22  property is warranted.

23     How broad this permanent injunction should be is another, trickier question. Federal Rule

24  of Civil Procedure 65(d)(1) provides that every injunction must contain: the reasons why it was

25  issued, its specific terms, and the acts restrained. Rule 65(d)(2) provides that only the following

26  people or entities who receive actual notice of the order by personal service or otherwise can be

27  bound by it: parties, parties' officers, agents, servants, employees, attorneys, and others who are

28

in active concert or participation with the aforementioned. Additionally, in trademark cases,

injunctions should be fashioned to prevent the likelihood of confusion. *Internet Specialties W.,*

*Inc. v. Milon-DiGiorgio Enterprises, Inc.*, 559 F.3d 985, 993 (9th Cir. 2009).

Here, Plaintiff requests a detailed and broad injunction. ECF No. 8 at 25. Having

considered Plaintiff's request and the law, the Court recommends the following permanent

injunction: Defendant Taizhou Xingye Pneumatic Tools Co., Ltd and its officers, agents,

servants, employees, attorneys, and all others who are in active concert or participation with the

aforementioned are permanently enjoined from using in commerce (including through

manufacturing, selling, offering for sale, distributing, promoting, advertising, and/or displaying)

any reproduction, counterfeit, copy, or colorable imitation likely to cause confusion of a product

that infringes on any of the following trademarks and/or patents of Plaintiff's:

1.  U.S. Trademark Registration No. 3,153,260;
2.  U.S. Trademark Registration No. 3,072,417;
3.  U.S. Trademark Registration No. 2,770,801;
4.  U.S. Trademark Registration No. 2,774,593;
5.  U.S. Trademark Registration No. 2,793,583;
6.  U.S. Trademark Registration No. 4,920,510 ("1000");
7.  U.S. Trademark Registration No. 4,920,511 ("2000");
8.  U.S. Trademark Registration No. 4,920,512 ("3000");
9.  U.S. Trademark Registration No. 4,666,773 ("4000");
10. U.S. Trademark Registration No. 2,591,111 ("RP");
11. U.S. D644,716 ("'716 Patent");
12. U.S. D548,816 ("'816 Patent");
13. U.S. D552,715 ("'715 Patent"); and
14. U.S. D552,213 ("'213 Patent").[1]

Defendant Taizhou Xingye Pneumatic Tools Co., Ltd.'s products that infringe these trademarks

and/or patents include, but are not necessarily limited to, the following models:

1.  M-1000G
2.  M-808
3.  M-4000G
4.  M-3000P
5.  MINI 3000P

---

[1] *See* ECF No. 1 at 4-5 (detailing the trademarks and patents at issue in this case).

1
2
3
4

    6.  H-2000
    7.  M-3000G
    8.  M-2000G
    9.  AB-17G
    10. R-3100
    11. An unnamed model number on MingFar's website that infringes U.S. Design Patent D552,715 for SATAjet 3000 B.[2]

5

    **2.**    **Damages**

6

Plaintiff requests statutory damages under 15 U.S.C. § 1117(c). ECF No. 8 at 20. This

7

provision of the Lanham Act provides that in cases involving the use of counterfeit marks, a

8

plaintiff may elect to recover statutory damages, as opposed to actual damages and profits. 15

9

U.S.C. § 1117(c). "[S]tatutory damages are appropriate in default judgment cases because the

10

information needed to prove actual damages is within the infringers' control and is not disclosed.

11

An award of statutory damages should not merely compel[ ] restitution of profit and reparation

12

for injury but also discourage wrongful conduct." *Hand & Nail Harmony, Inc. v. Guangzhou*

13

*Shun Yan Cosmetics Co.*, No. 2:12-CV-01212-JCM, 2015 WL 4378197, at \*6 (D. Nev. July 15,

14

2015) (internal quotations and citations omitted). To this end, the Court may award

15
16

(1) not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or

17
18
19

(2) if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

20

15 U.S.C. § 1117(c).

21

Here, Plaintiff requests $10,000,000 in statutory damages under 15 U.S.C. § 1117(c)(2),

22

and the Court finds that this request is permissible under the statute and just. Plaintiff alleges that

23

Defendant engaged in willful trademark counterfeiting. ECF No. 1 at 12-13. This allegation is

24

supported by factual allegations that Defendant has infringed Plaintiff's trademarks in the past,

25
26
27

[2] *See* ECF No. 1 at 9-11 (detailing Defendant's counterfeit spray guns and the intellectual property of Plaintiff's that the spray guns infringe).

28

1   that Plaintiff has obtained multiple judgments against Defendant for this conduct, that at least

2   some of Defendant's infringing products are nearly identical to Plaintiffs, and that Defendant

3   infringed numerous trademarks and patents of Plaintiffs. *See id.* at 4-5, 7, 9-11, 12; ECF No. 1-3.

4   These allegations are all deemed true. *See Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d

5   696, 702 (9th Cir. 2008) ("[A]ll factual allegations in the complaint are deemed true, including

6   the allegation of [defendant's] willful infringement of [plaintiff's] trademarks."). Plaintiff further

7   alleges that Defendant had nine infringing products that used ten different counterfeit

8   trademarks. *See id.* at 4-5, 9-11. Some of these counterfeit trademarks were used on more than

9   one of the nine infringing products, resulting in Defendant using 21 counterfeit marks total. *See*

10  *id.* at 9-11. Plaintiff also alleges that the infringing products were offered for sale and distributed.

11  *See id.* at 12-13. All these allegations are deemed true. *See TeleVideo Sys.*, 826 F.2d at 917-18;

12  Fed. R. Civ. P. 8(b)(6). Accordingly, the Court may award up to $2,000,000

13  per counterfeit mark per type of good offered for sale or distributed. *See* 15 U.S.C. § 1117(c)(2).

14  Given Defendant's use of 21 counterfeit marks, the Court may award Plaintiff up to $42,000,000.

15  Against this backdrop, the Court finds it is just to award Plaintiff its requested $10,000,000 in

16  statutory damages (less than a quarter of what the Court could award).

17              **3.      Attorneys' Fees**

18          Section 1117(a) authorizes the Court to award attorneys' fees to the prevailing party in

19  "exceptional cases." The phrase "exceptional cases" is not defined within the statute. In

20  providing guidance on the meaning of this phrase, the Ninth Circuit has noted that "numerous

21  courts have awarded attorneys' fees to trademark owners who prosecuted actions against willful

22  and deliberate infringers and counterfeiters." *Playboy Enterprises, Inc. v. Baccarat Clothing Co.*,

23  692 F.2d 1272, 1276 (9th Cir. 1982). The Ninth Circuit also found that a district court abused its

24  discretion in failing to award attorneys' fees when the defendant deliberately arranged to obtain

25  and sell what it knew to be counterfeit goods. *Id.* at 1276-77.

26          Here, the Court finds that this is an exceptional case and will recommend that Plaintiff be

27  awarded its reasonable attorneys' fees. The Court finds that this is an exceptional case for several

28

1   reasons. First, the Court already found that Defendant's infringing conduct was willful based on

2   Plaintiff's undisputed allegations. Second, Plaintiff alleges and offers evidence that it has

3   successfully sued Defendant multiple times before for violating its intellectual property rights.

4   ECF Nos. 1 at 7; 1-3. Accordingly, Defendant is well aware of Plaintiff, its intellectual property

5   rights, and the fact that it should not be infringing on these rights. Still, Defendant has not

6   stopped violating Plaintiff's rights. Third, Plaintiff has offered evidence that at least some (if not

7   all) of Defendant's infringing products are nearly identical to Plaintiff's. *See, e.g.,* ECF No. 1 at

8   12. Fourth, Defendant did not just infringe one of Plaintiff's trademarks but rather ten trademarks

9   and four patents. *Id.* at 4-5, 9-11. All these factors suggest that Defendant knowingly, willfully,

10  and repeatedly violated Plaintiff's intellectual property rights.[3] As such, the Court finds that this

11  is an exceptional case and that the attorneys' fees provision of the Lanham Act "was specifically

12  directed towards eliminating such blatant activity." *See Playboy Enterprises*, 692 F.2d at 1276.

13          Plaintiff requests $7,153 in attorneys' fees, and the Court finds that this is a reasonable

14  request. ECF No. 8 at 22. A court should only award attorneys' fees that it deems reasonable.

15  *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). The lodestar method is the

16  customary method the court uses when determining attorneys' fees. *Morales v. City of San*

17  *Rafael*, 96 F.3d 359, 363 (9th Cir. 1996). "The 'lodestar' is calculated by multiplying the number

18  of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate."

19  *Id.*; *see also McGrath v. City of Nevada*, 67 F.3d 248, 252 (9th Cir. 1995). The lodestar amount

20  is a presumptively reasonable fee. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 982 (9th Cir.

21  2008). Although presumptively reasonable, the court may adjust the lodestar amount based on

22  the *Kerr* factors[4] to account for facts that have not been subsumed in the lodestar calculation. *Id.*

---

24  [3] To the extent more evidence of Defendant's willful conduct might be preferred before attorneys' fees
    are awarded, Plaintiff will not be punished for Defendant's failure to appear and allow discovery into
25  such matters.

26  [4] The *Kerr* factors include:

27          (1) the time and labor required, (2) the novelty and difficulty of the questions involved,
            (3) the skill requisite to perform the legal service properly, (4) the preclusion of other

1   Here, Plaintiff's request for fees is based on the lodestar method (with rates between $235 and

2   $315 per hour and 25.7 hours spent on this case). *See* ECF No. 8-6 (invoices). The Court finds

3   that amount requested, $7,153, is reasonable and need not be adjusted based on the *Kerr* factors.

4                 **4.**      **Costs**

5           Plaintiff requests $742.10 in costs it incurred in this action under 15 U.S.C. § 1117(a)(3).

6   This section provides that "[w]hen a violation of any right of the registrant of a mark registered

7   in the Patent and Trademark Office" has been established in a civil action, the plaintiff is entitled

8   to the costs of the action. 15 U.S.C. § 1117(a)(3). Here, Plaintiff has established that its rights as

9   a registrant of multiple marks have been violated. *See* ECF No. 1; *TeleVideo Sys.*, 826 F.2d at

10   917-18 (all well-pled facts in the complaint are taken as true). Plaintiff also submitted a bill of

11   costs establishing that it incurred $742.10 in costs to file this action and serve Defendant. ECF

12   No. 9. Accordingly, the Court will recommend that Plaintiff be awarded these costs.

13   **IV.**    **Recommendations**

14           **IT IS THEREFORE RECOMMENDED** that Plaintiff's motion for default judgment

15   (ECF No. 8) be GRANTED.

16           **IT IS FURTHER RECOMMENDED** that default judgment be entered in favor of

17   Plaintiff SATA GmbH & Co. KG and against Defendant Taizhou Xingye Pneumatic Tools Co.,

18   Ltd.

19           **IT IS FURTHER RECOMMENDED** that Defendant Taizhou Xingye Pneumatic Tools

20   Co., Ltd and its officers, agents, servants, employees, attorneys, and all others who are in active

21   concert or participation with the aforementioned be permanently enjoined from using in

22

23

24           employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience,

25   reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in

26   similar cases.

27   *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).

28

commerce (including through manufacturing, selling, offering for sale, distributing, promoting,

advertising, and/or displaying) any reproduction, counterfeit, copy, or colorable imitation likely

to cause confusion of a product that infringes on any of the following trademarks and/or patents

of Plaintiff's:

1. U.S. Trademark Registration No. 3,153,260;
2. U.S. Trademark Registration No. 3,072,417;
3. U.S. Trademark Registration No. 2,770,801;
4. U.S. Trademark Registration No. 2,774,593;
5. U.S. Trademark Registration No. 2,793,583;
6. U.S. Trademark Registration No. 4,920,510 ("1000");
7. U.S. Trademark Registration No. 4,920,511 ("2000");
8. U.S. Trademark Registration No. 4,920,512 ("3000");
9. U.S. Trademark Registration No. 4,666,773 ("4000");
10. U.S. Trademark Registration No. 2,591,111 ("RP");
11. U.S. D644,716 ("'716 Patent");
12. U.S. D548,816 ("'816 Patent");
13. U.S. D552,715 ("'715 Patent"); and
14. U.S. D552,213 ("'213 Patent").

Defendant Taizhou Xingye Pneumatic Tools Co., Ltd.'s products that infringe these trademarks

and/or patents include, but are not necessarily limited to, the following models:

1. M-1000G
2. M-808
3. M-4000G
4. M-3000P
5. MINI 3000P
6. H-2000
7. M-3000G
8. M-2000G
9. AB-17G
10. R-3100
11. An unnamed model number on MingFar's website that infringes U.S. Design Patent D552,715 for SATAjet 3000 B.

**IT IS FURTHER RECOMMENDED** that Defendant be ordered to pay Plaintiff $10,000,000 in statutory damages.

**IT IS FURTHER RECOMMENDED** that Defendant be ordered to pay Plaintiff $7,153 in attorneys' fees.

1    **IT IS FURTHER RECOMMENDED** that Defendant be ordered to pay Plaintiff

2    $742.10 in costs.

3                                                  **NOTICE**

4    This report and recommendation is submitted to the United States district judge assigned

5    to this case under 28 U.S.C. § 636(b)(1). A party who objects to this report and recommendation

6    may file a written objection supported by points and authorities within fourteen days of being

7    served with this report and recommendation. Local Rule IB 3-2(a). Failure to file a timely

8    objection may waive the right to appeal the district court's order. *Martinez v. Ylst*, 951 F.2d

9    1153, 1157 (9th Cir. 1991).

10

11   DATED: January 27, 2021

12                                                  _____

13                                                  Brenda Weksler
                                                    United States Magistrate Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28